25-mj-6585-MPK

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Janet Connolly, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Boston field office of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been an HSI Special Agent since 2008. I have been assigned to the Cyber Crimes and Child Exploitation groups since 2013.

2. While employed by HSI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. I have gained experience through training and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256(8)(A)) and also referred to in this Affidavit as "child sexual abuse material" or "CSAM")[1] in all forms of media including computer media. I have received training in the investigation of cyber-crimes, including participation in the 2018 Atlanta National Law Enforcement Training on Child Exploitation, the 2016 Dallas Crimes Against Children Conference, and the 2015 New England Cyber Crime Conference. For the past approximately two years, I have specialized in dark web investigations, with a focus on child sexual abuse and child

---

[1] "Child pornography" is a term defined by statute as "any visual depiction…of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaged in sexually explicit conduct." *See* 18 U.S.C. § 2256(8)(A). In recent years, child pornography has been more widely referred to as "child sexual abuse material (CSAM)," including by law enforcement and the National Center for Missing and Exploited Children. Where I use that term in this affidavit, it is to refer to child pornography as defined by federal statute.

pornography websites. In 2024, I participated in a multinational, multi-agency task force to identify child sexual abusers who are active on the dark web. As an agent in the HSI Boston field office, I frequently participate in the execution of search warrants involving child exploitation and pornography, and I work closely with HSI forensic agents throughout these investigations and prosecutions. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251, 2252, 2252A, 2422, and 2423, and I am authorized by law to request a search warrant.

3.   I submit this affidavit in support of a criminal complaint charging Ariel TORRES (YOB 1987) (hereafter "TORRES"), of Chestnut Hill,[2] Massachusetts, with a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (Possession of Child Pornography).

4.   The statements contained in this affidavit are based in part on my own personal knowledge; by information provided by United States federal law enforcement agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from foreign law enforcement; information gathered from the service of administrative subpoenas; the results of physical surveillance conducted by law enforcement agents; independent investigation and analysis by law enforcement agents/analysts and computer forensic professionals; and my experience, training and background as a Special Agent.

5.   Because this affidavit is submitted for the limited purpose of establishing probable cause to secure a criminal complaint and arrest warrant, I have not included each and every fact

---

[2] Chestnut Hill is a Massachusetts village, not an incorporated municipality. The village is partly located in Brookline, along with two other neighboring cities. Therefore, TORRES' residence may be accurately described as either Brookline or Chestnut Hill.

that I, or others, have learned during the course of this investigation. I have set forth only the facts that I believe are necessary to establish the requisite probable cause.

## STATEMENT OF PROBABLE CAUSE

**Background of Investigation:**

6.      In or around December 2023, HSI Boston started investigating the "TARGET WEBSITE,"[3] which was a child pornography website that allowed users to communicate with one another, view child sexual abuse material (CSAM) via live stream, and upload and download CSAM. The website operated on the Tor network, which is a computer network available to Internet users that is designed specifically to facilitate anonymous communication over the Internet. The Tor network attempts to do this by routing Tor user communications through a globally distributed network of relay computers, along a randomly assigned path known as a "circuit."

7.      On April 14, 2022, and most recently on November 26, 2024, the computer servers hosting the TARGET WEBSITE, which were located outside of the United States, were seized by a foreign law enforcement agency (referenced herein as "FLA"). The FLA is a national law enforcement agency of a country with an established rule of law. There is a long history of U.S. law enforcement sharing criminal investigative information with the FLA and the FLA sharing criminal investigative information with U.S. law enforcement, across disciplines and including the investigation of crimes against children. The FLA determined that the servers contained a database for users who accessed the TARGET WEBSITE. The information obtained from the database

---

[3] The true name of the TARGET WEBSITE is known to law enforcement but redacted here to protect the integrity of the ongoing investigation into the users of the site.

varied for each user account. Some of the items included, among other things, account usernames, passwords, account logins, and financial transaction data (including cryptocurrency addresses assigned to user accounts, transaction hashes, dates and timestamps of transactions, and cryptocurrency payment amounts). The FLA traced many of the cryptocurrency payments made to the TARGET WEBSITE to hosted wallets at Coinbase, for which subscriber information and "know your customer" ("KYC") documentation was maintained by the company. The FLA requested information from Coinbase regarding these transactions. In response, Coinbase, a company based in the United States, provided the FLA with Coinbase account IDs associated with each transaction. The FLA then provided these Coinbase account IDs to HSI Boston.

8. On or about December 6, 2024, HSI Boston submitted a summons to Coinbase for a Coinbase account, from which server data confirmed two Litecoin payments were made to the TARGET WEBSITE in March 2024. These two Litecoin payments were identified as having been made from a specific account on the TARGET WEBSITE, hereinafter "TARGET ACCOUNT." On or about December 24, 2024, Coinbase responded and provided subscriber information that included the name "Ariel TORRES," social security number ending in 5870, the address 7 Timon Avenue, Apt 3, Brookline, MA 02467, and identity documents consisting of Commonwealth of Massachusetts-issued Identification Cards bearing the name Ariel TORRES and date of birth of xx/xx/1987.[4]

---

[4] Law enforcement was provided with the full social security number and full date of birth for TORRES but it is redacted herein.

9. On March 17, 2025, HSI served a summons on T-Mobile requesting subscriber information for phone number ending in 4513.[5] On or about that same date, T-Mobile responded and identified Ariel Torres as the subscriber of that phone number.

10. Thereafter and also in March 2025, I served process on Telegram Messenger Inc. ("Telegram") requesting subscriber information associated with TORRES's phone number. On June 2, 2025, Telegram responded to the legal process served on them in March 2025 and provided the account username associated with TORRES's phone number. The Telegram username was identical to the TARGET ACCOUNT username that was active on the TARGET WEBSITE. The FLA provided HSI the TARGET ACCOUNT username in its investigative referral.

**Federal Search Warrants/Preliminary Forensic Examination:**

11. In May 2025, HSI Cyber Group obtained federal search warrants authorizing the search of TORRES and TORRES's residence. *See* 25-6204-MPK and 25-6205-MPK.

12. Based on the investigation, on May 8, 2025, at approximately 0605 hours, HSI Cyber Group agents, with assistance from the Brookline Police Department, executed federal search warrants (the "Search Warrants") for TORRES and TORRES' residence located in Chestnut Hill, Massachusetts, for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A.

13. TORRES, as well as his four roommates, were present in the residence when agents arrived to execute the residential warrant. The residence is an apartment consisting of multiple bedrooms on the top two floors of a multi-family house. When agents arrived to execute the warrant, one of TORRES' roommates answered the door for law enforcement and was asked which

---

[5] Law enforcement provided the full phone number to T-Mobile but the full number is redacted herein.

bedroom was "Ariel's." In response, the roommate pointed out TORRES's bedroom. Agents proceeded to that bedroom and encountered TORRES in the bedroom after TORRES answered the door to the bedroom. There was only one bed in that bedroom. This bedroom was known to be TORRES' bedroom because a roommate identified it, TORRES answered the door to the bedroom, and during the execution of the search warrant, agents located TORRES's wallet in the bedroom which contained TORRES' license. Additionally, a laptop computer was located in the bedroom that was powered on and depicted a photograph of TORRES and name, "Ariel Torres," on the monitor.

14. TORRES was informed by agents that HSI had a search warrant for the residence. During the search of TORRES' residence, agents located and seized multiple devices from his bedroom, including an iPhone, two MacBook laptops (including a MacBook Model A1989), one Dell laptop, three hard drives, and one USB flash drive.

15. At approximately 0625 hours, I began a digital recording and asked to speak with TORRES in a vacant room on the apartment's top floor. Before reading his *Miranda* warnings or asking any questions, I explained to TORRES that HSI was conducting a search warrant on the apartment and that he and his roommates were not under arrest nor in custody. I asked TORRES if he would be willing to speak with me. TORRES responded, "I would like an attorney present." I presented TORRES a copy of the search warrant, which he read silently to himself and said nothing after he finished reading it. The interview and recording were concluded. While I was speaking with TORRES, other agents conducted a search of his bedroom.

16. While on scene, HSI conducted a manual preliminary examination of one of the devices seized, namely, the MacBook Model A1989. That device was powered on and locked

when it was located and seized, but while on scene, agents were able to successfully unlock it using a password provided by the FLA. In their investigative referral, the FLA provided the password that was associated with TORRES's account on the TARGET WEBSITE.

17. At the conclusion of the execution of the search warrants, all seized electronic devices were transported to the HSI Boston Computer Forensic Laboratory to be forensically examined. At some point thereafter, a preliminary forensic examination of all the devices was conducted by HSI. During the examination, HSI located CSAM on two of the seized devices: the MacBook Pro Model A1989 and the USB flashdrive. At present, approximately forty-nine image files and thirty-seven video files of CSAM were located on the MacBook Pro Model A1989. An example of those files is described as follows:

> a. *...41f.MP4[6] - This video file is approximately 48 seconds long, and depicts a clothed prepubescent female who is observed standing in front of an adult male. The prepubescent female appears to be approximately four to six years old based on the overall size of her body, her child-like facial features, and the apparent lack of breast development. During the video, an adult male is seen placing his erect penis on the lips and tongue of the prepubescent female, and forcing his penis inside her mouth while he holds the back of her head with his hand.[7]*

---

[6] HSI is aware of the full file name of each of the CSAM files described herein but each is redacted herein so that the file name is not listed publicly.

[7] I am aware that the "preferred practice" in the First Circuit is that a magistrate judge view images that agents believe constitute child pornography by virtue of their lascivious exhibition of a child's genitals. *United States v. Brunette*, 256 F.3d 14, 17-19 (1st Cir. 2001) (affiant's "legal conclusion parroting the statutory definition […] absent any descriptive support and without an independent review of the images" insufficient basis for determination of probable cause). Here, however, the descriptions offered herein "convey to the magistrate more than [my] mere opinion that the images constitute child pornography." *United States v. Burdulis*, 753 F.3d 255, 261 (1st Cir. 2014) (distinguishing *Brunette*). The children described herein appear to range in age from approximately four years old to approximately ten years old, - all clearly younger than eighteen. Furthermore, the descriptions of the files here are sufficiently specific as to the age and appearance of the alleged children as well as the nature of the sexual conduct pictured in each file, such that the Court need not view the files to find that they depict child pornography. *See United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice for an applicant seeking a warrant based on images of alleged child pornography is for an applicant to append the images *or provide a sufficiently specific description of the images* to enable the magistrate judge to determine

18.    At present, approximately twelve image files and thirty-four video files of CSAM were located on the USB flash drive. Two examples of those files are described as follows:

> a. ...sp.mp4 - This video file is approximately one minute and one second long, and depicts a prepubescent female who is observed mostly nude aside from a yellow shirt pulled up to her shoulders. She is observed laying on her back and her legs are spread apart exposing her vagina to the camera. The prepubescent female appears to be approximately six to ten years old based upon the overall size of her body, and the lack of pubic hair or breast development. She is seen holding and appearing to look at an electronic device, while an adult hand repeatedly inserts a finger into her vagina.
>
> b. ...d90.jpg - This image depicts a prepubescent female, who is observed entirely nude, aside from a line of black material across her stomach. She is observed on her back with her legs spread apart exposing her vagina, and she is propped up on her elbows. The prepubescent female appears to be approximately five to seven years old based on the overall size of her body, her child like facial features, and the lack of pubic hair or breast development. An adult head is seen placed in between the prepubescent minor's legs in front of her vagina. Also, in the background of the image, another nude prepubescent child is observed laying on their stomach with their face in between the legs of a partially nude adult female. The first prepubescent child's left hand is observed on the buttocks of the second prepubescent child. The second prepubescent child appears to approximately the same age as the first prepubescent female, based on the overall size of their body. However, age is difficult to determine due to the way the child is positioned. Further, it is difficult to determine the sex of the second child in the image due to their positioning, where neither the face nor genitals are in view.

19.    Additionally, preliminary forensic examination of the MacBook Pro revealed that the Tor Browser was installed on the device. A review of the information contained within the Tor Browser application revealed that the TARGET WEBSITE had been saved as a bookmark

---

independently whether they probably depict real children.") (emphasis added); *see also United States v. LaFortune*, 520 F.3d 50, 56 (1st Cir. 2008) (similarly emphasizing *Syphers* court's use of "or" in describing the *Brunette* "best practice"). Where I have included such nonconclusory, sufficiently specific descriptions, this Court need not view the imagery to find that they depict child pornography. Nonetheless, the described imagery is available for review at the Court's request.

several times between December 2023 and June 2024. Also located on the Tor Brower were multiple other bookmarks that I know to be child pornography sites and directories.

## CONCLUSION

20. Based on the foregoing, I submit that there is probable cause to believe that on or about May 8, 2025, TORRES knowingly possessed materials that contained one or more images of child pornography, as defined in 18 U.S.C. § 2256(8), that involved a prepubescent minor and a minor who had not attained 12 years of age, and that had been mailed, and using any means and facility of interstate and foreign commerce shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).

Sworn to under the pains and penalties of perjury,

/s/ Janet Connolly
_____
Special Agent Janet Connolly
Homeland Security Investigations

SWORN before me telephonically in accordance with Fed. R. Crim. P. 4.1(d)(3) on this __18th__ day of November, 2025.

_____
HONORABLE M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE

9